IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JESSICA LYN WELCH                                                         PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:14MC18-DAS

ALL AMERICAN CHECK
CASHING, INC., a Mississippi
Corporation                                                               DEFENDANT

## ORDER

This matter is before the court on defendant's motion (#10) for payment of attorneys' fees and expenses by Erin Petty, a non-party witness. Defendant submits that Petty has intentionally evaded numerous attempts at serving her with process. In response, Petty argues that she did not actively evade service of process and that defendant has suffered no harm because, ultimately, she was deposed in this matter on December 11, 2014.

Petty was not a party to the underlying case[1]; she was pulled into this litigation after the plaintiff, Jessica Welch, filed a motion to designate a her as a new witness outside of the pertinent deadlines. Because the trial court granted plaintiff's motion, defendant, All American Check Cashing, Inc., was given until November 21st, 2014 to depose Petty. Thereafter, Petty was noticed to be deposed on October 7, 2014. Although she did attend this deposition, Petty allegedly became combative and uncooperative. Moreover, she stopped the deposition to call her attorney, Lisa Meggs, for advice. After conferring with her client, Meggs counseled Petty "not to answer any more questions that have nothing to do with the lawsuit." Doc. 2, p. 3. During this phone conversation, Meggs also told defense counsel that they "aren't going to get anything more productive out of [Petty]." *Id*. This deposition was never completed.

---

[1] *Welch v. All American Check Cashing, Inc.*, Case No: 3:13-CV-271 (May 7, 2013).

Subsequent attempts at rescheduling her deposition were thwarted, and Petty refused to offer defense counsel any dates for which she would be available to complete the deposition. Moreover, in an email declining to accept service of process on behalf of her client, Meggs stated that the defendant would have to "jump through all the hoops" in order to depose Petty, including serving her with a subpoena. Doc. 2, exhibit 7. This statement proved prophetic: at least twenty-six attempts were made at serving Petty with process, none of which were successful. *See* Doc. 11, exhibit 1.

The first attempt at serving Petty with a subpoena was made at her residence on November 12, 2014, nine days before the deposition was scheduled to take place. *See id*. Like all that would follow, this attempt failed. Worried about the failed attempt, especially in light of Petty's previous lack of cooperation, the defendant filed a motion to compel Petty's deposition in this court that same day. Doc. 1. The motion was granted, and this court entered an order stating, in relevant part, as follows:

> The court finds that the defendant is entitled to take the deposition of [Petty] in this action and orders that this deposition shall be taken on Friday, November 21, 2014, as noticed by the defendant, contingent upon the defendant being able to serve [Petty] with a deposition subpoena.

Doc. 8. Notwithstanding this order, several more attempts at serving Petty with the deposition subpoena failed, prompting the first of two telephonic hearings. During the hearing, this court noted that a motion for fees and expenses would be entertained if Petty was, indeed, evading service of process:

> If there is evidence… that Ms. Petty is avoiding [service of process], I'd be open to hearing an argument or motion for costs you're having to pay the process server for driving around all over the place to find Ms. Petty.

Telephonic Conference on 11/17/2014, at 22:35. Approximately nine more failed attempts followed in the wake of this telephonic hearing. *See* doc. 11, exhibit 1.

Because it could not serve her with process before the deadline expired, the defendant was forced to file a motion to extend the discovery deadline on November 21, 2014. Southern District Doc. 123. The court granted the motion and extended the discovery deadline to December 31, 2014. Only then did Petty agree to set aside time for the defendant to take her deposition, which was finally carried out on December 11, 2014.

Yet again, however, Petty proved to be a hostile witness. Not only did she fail to comply with the subpoena, which required her to bring her cellular phone to the deposition, she also refused to answer questions regarding whether she had evaded service of process, which triggered the second telephonic hearing with this court. During the hearing, this court ordered Petty to answer the defendant's questions and stated that:

> I (Magistrate Judge Sanders) remember order that if there was evidence to suggest [Petty] was evading process, that I would entertain a motion to have Ms. Petty pay the cost of the process server. I hear defense counsel saying it appears as if she was evading process. It seems to confirm that if she simply won't answer when she was at work, very, very simple questions, very, very relevant to the issues before the court.

Doc. 14, p. 57: 7-16.

Ultimately, the issue before the court is whether the defendant is entitled to the costs arising from Petty's misconduct. Pursuant to Federal Rule of Civil Procedure 37(b)(1), "[i]f the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court." District courts have "broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990). This discretion is subject to certain limitations, however. Although the most severe remedies are normally reserved for those who violate discovery orders willfully or in bad faith, *id.* at 1021, the Fifth Circuit does not require a showing of willful or "contumacious" misconduct as a prerequisite to sanctions less severe than dismissal

or default judgment. *Chilcutt v. United States*, 4 F.3d 1313, 1322 & 1323 n. 23 (5th Cir. 1993). Awarding attorney's fees and expenses is viewed by the Fifth Circuit as one of the least severe remedies afforded by Rule 37(b). *See id.* at 1320 n. 17.

Despite Petty's assertions that she was not intentionally evading service of process, the record speaks volumes to the contrary. Furthermore, Petty's argument that the defendant "has not been harmed in any way by its failure to have Ms. Petty served with the subpoena for the earlier date" (doc. 13, p. 4) is unfounded, as the defendant was forced to bear unnecessary costs in its pursuit of her testimony. *See* doc. 16. Therefore, in light of her misconduct, this court finds that Petty should be held responsible for the reasonable costs associated with her actions, which include attorneys' fees and expenses.

In computing attorney's fees, the "lodestar method," which involves multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work, is generally approved in this circuit. *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002). To support an award of Rule 37 sanctions, the affidavit of counsel can serve as proof of the amount to be awarded. *Id*. However, Petty "can only be held responsible for the reasonable expenses [including attorneys' fees] caused by [her] failure to comply with discovery." *Chapman & Cole & CCP, Ltd. V. Itel Container Int'l B.V.*, 865 F.2d 676, 687 (5th Cir.), *cert. denied*, 493 U.S. 872, 110 S.Ct. 201, 107 L.Ed. 2d 155 (1989).

According to defense counsels' affidavit, the defendant has incurred $3,682.50 in legal fees as a result of Petty's actions. Doc. 16, p. 2. In addition to this sum, the defendant has also incurred non-legal expenses totaling $201.86 in trying to serve her with a deposition subpoena duces tecum. *Id*. The onset date for calculating these expenses was November 12, 2014, the day in which the first attempt at service of process had failed. However, until the telephonic hearing

on November 17, 2014, in which Petty's attorney participated, there is no objective evidence indicating that Petty was at least constructively aware of the defendant's attempt to serve her with process. Therefore, for purposes of calculating the reasonable expenses to which the defendant is entitled, the court finds that the proper onset date is November 17, 2014.

Using this onset date, the defendant's legal fees have been reduced to $3638.50[2]. Similarly, the defendant's non-legal expenses have been reduced to $64.75[3&4]. Based on the law of this Circuit, the court finds that an award of $3,703.25 is reasonable in light of Petty's misconduct.

**IT IS THEREFORE ORDERED** that Erin Petty shall reimburse All American Check Cashing, Inc., $3,703.25, which represents the reasonable costs it incurred while trying to serve her with process.

**SO ORDERED** this, the 20th of March, 2015.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE

---

[2] The billable hours for Katie Alexander on the 12th (0.2) and 17th (0.2) have been deducted from the recovery sought. Doc. 16-1, p. 2.

[3] This sum was calculated by deducting the following expenses: 1) "Northern District of Mississippi- File Motion to Compel Deposition of Erin Petty," 2) "FedEx to Court Clerk, Northern District of MS, on 11/13/14," 3) FedEx to DRM from Court Clerk, Northern District of MS, on 11/14/14." Doc. 16-1, p. 4.

[4] This sum was further reduced by deducting the costs associated with the process server's fee for those attempts predating the onset date using this equation: [($129.3 0 - $30 surveillance fee) x (26 total attempts / 9 attempts postdating onset date)]. Doc. 11-1, pp. 1-3.